## AFFIDAVIT

I, Colin Simons, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) currently assigned to the Burlington, Vermont Resident Agency of the Albany, New York Division. I have been a Special Agent for over 15 years. I am responsible for working cases involving a variety of criminal violations, to include violent crimes and gangs. I have also been the affiant to numerous federal complaints and search warrants pertaining to violent crime and drugs. As a Special Agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

2. I submit this affidavit in support of an application for a search warrant for 33 Oak Street, Apartment #4, in Brattleboro, Vermont (SUBJECT LOCATION), described in detail in Attachment A. I believe probable cause exists to search the SUBJECT LOCATION for evidence relating to violations of the Controlled Substances Act, specifically possession with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. § 841. The items to be seized during the search are listed in Attachment B.

3. The information contained within this affidavit is based upon my training, experience, and investigation, as well as information that has been conveyed to me by other law enforcement officers. The following has been related to me by persons having direct knowledge of the events described below, including Vermont State Police Detective Sean Reilly, and other law enforcement officers involved in this investigation. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation.



4. For the reasons set forth in this affidavit, probable cause exists to believe that the distribution of controlled substances has occurred at the SUBJECT LOCATION; the SUBJECT LOCATION contains evidence of possession with intent to distribute controlled substances; the SUBJECT LOCATION contains contraband and fruits of these crimes; and that the SUBJECT LOCATION contains property designed for use, intended for use, or that has been used in committing these crimes.

### PROBABLE CAUSE

5. On December 28, 2018, the Honorable Judge Katherin Hayes granted a search warrant for the SUBJECT LOCATION, which was executed that same day. Officers located Francis **MACIE**, aka "Peanut," and others inside the residence. A double-barreled sawed-off shotgun was located under the couch cushion in the living room. The barrel of the shotgun was located on the floor of **MACIE's** bedroom. Four boxes of ammunition were located under **MACIE's** bed. A loaded .38 caliber revolver was found on the floor of the bathroom, and the revolver appeared to have had its serial number intentionally removed. **MACIE** advised officers that one of the bedrooms was used by "them," and inside that bedroom officers located a large black safe. Inside the safe were two .40 caliber magazines loaded with bullets, over 200 grams of cocaine base packaged in various baggies, and approximately 70 Oxycodone/Morphine pills. Paperwork within the safe bore the name of Chyquan Cupe, who has since been indicted by the federal grand jury seated in Burlington, Vermont, which charged him with multiple counts of distributing controlled substances in case number 5:19-cr-30.

6. In the months of January and February of 2019, the Southern Vermont Drug Task Force (SVDTF) continued to investigate the sale of controlled substances from the SUBJECT LOCATION. The targets of this investigation were Linda **WAINWRIGHT** and Desiree

2

WELLS-COOPER. Both WAINWRIGHT and WELLS-COOPER have been identified as residents of the SUBJECT LOCATION. The investigation confirmed that Macie remains a tenant of the apartment. The SVDTF was assisted by a confidential informant(s) that I will refer to by the pseudonym, "19SR01," and "19JFB003." For the sole purpose of maintaining literary flow, both "19SR01" and "19JFB003" will be referred to in the masculine throughout the entirety of this case. In the immediate instance, "19SR01" and "19JFB003" are cooperating with the SVDTF in exchange for monetary compensation. "19SR01" has the following convictions; resisting arrest (2013), and careless and negligent operation (2017). "19JFB003" has the following convictions; retail theft (2017, 2001), disturbing the peace (2002), burglary (2002), forgery (2002), and resisting arrest (2001).

*February 15, 2019 Controlled Purchase from WELLS-COOPER*

7.     On February 15, 2019, Vermont State Police Detective Sean Reilly arranged a meeting with "19SR01" with the intention of purchasing heroin in the Brattleboro, VT area. "19SR01" advised he could purchase heroin from Desiree WELLS-COOPER. "19SR01" advised he had purchased heroin from WELLS-COOPER once in the past; earlier in 2019. "19SR01" advised WELLS-COOPER was living at 33 Oak Street, which is where he could go to purchase heroin from her.

8.     Det. Reilly provided "19SR01" with $90.00 of prerecorded task force funds in order to purchase one (1) bundle of heroin from WELLS-COOPER. "19SR01" was searched and his vehicle was searched. No contraband was located. Det. Reilly also provided "19SR01" with an electronic recording device in order to monitor the incident.

9.     Dets. Todd and Behan provided surveillance in the area while Det. Reilly followed "19SR01" to the area of 33 Oak Street. "19SR01" arrived at 33 Oak Street and entered

3

Apartment 4 on foot. Det. Todd observed "19SR01" enter the residence. After several moments, "19SR01" was then seen by Det. Todd exiting the residence and returning to his vehicle. Det. Reilly surveilled "19SR01" then drove back to the predetermined meeting location, where Det. Reilly met with him again.

    10. "19SR01's" person was searched for a second time. "19SR01" turned over to law enforcement what he had purchased from **WELLS-COOPER**. No money or contraband was located. "19SR01" then provided a sworn statement. The following is a mere summary of this statement, which was recorded:

    a. "19SR01" advised he had just conducted a controlled purchase of 10 bags of heroin from **WELLS-COOPER**. "19SR01" advised Det. Reilly instructed him to contact **WELLS-COOPER** in order to purchase one (1) bundle of heroin for $90.00. "19SR01" stated that Det. Reilly provided him $90.00 to purchase the bundle of heroin. "19SR01" drove his vehicle to 33 Oak Street [Apartment 4] and knocked on the door. An unknown male opened the door and let "19SR01" inside.

    b. "19SR01" then told Linda (**WAINWRIGHT**) that she was looking for **WELLS-COOPER**. "19SR01" told **WELLS-COOPER** that he had money for her, and advised he needed a bun (bundle) and that he had $90.00. **WELLS-COOPER** threw a bundle of heroin to him and "19SR01" picked it up. "19SR01" then provided **WELLS-COOPER** with the $90.00.

    c. "19SR01" advised he only saw Linda, **WELLS-COOPER**, and the unknown male inside the residence. "19SR01" advised he, his passenger, and his vehicle were searched before and after the incident and no contraband was located.

4

"19SR01" told Det. Reilly that he did not manipulate the narcotics and did not receive any additional money and/or narcotics. He also told Det. Reilly that he did not go anywhere he was not instructed to go and did not do anything that he was not instructed to do.

11. Det. Reilly was able to review the electronic recording equipment that was given to "19SR01" to monitor the incident. On the recordings, Det. Reilly observed "19SR01" drive his vehicle to 33 Oak Street, exit the vehicle, and approach Apartment 4 of 33 Oak Street. "19SR01" was then let inside the residence and was overheard asking **WELLS-COOPER** for a bundle of heroin. "19SR01" then said "Thanks, Desi [**WELLS-COOPER**]," and exited the residence. "19SR01" returned to his vehicle and drove back to the location to meet with law enforcement.

12. On February 15, 2019, Det. Reilly tested a sample of the substance which field tested positive for the presence of fentanyl using a NARK field test kit designed to test for the presence of heroin/fentanyl. Det. Reilly noted that there were 10 total bags and they were all unmarked.

*February 20, 2019 Controlled Purchase from WAINWRIGHT*

13. Before the controlled purchase outlined below, "19JFB003" had advised Drug Task Force members of a white female whom they have purchased heroin from several times in the past. "19JFB003" advised the female's name is Linda **WAINWRIGHT** and she is currently living at 33 Oak Street in the Town of Brattleboro, VT.

14. On February 20, 2019, "19JFB003" contacted Det. Behan and advised they would be able to purchase heroin from **WAINWRIGHT** at her residence in Brattleboro, VT. Det. Behan then met with "19JFB003" to arrange a controlled purchase of heroin from

5

**WAINWRIGHT**. Det. Behan asked "19JFB003" if they needed to call or message **WAINWRIGHT** prior to arriving at her residence, which "19JFB003" advised no. "19JFB003" stated they could just go to **WAINWRIGHT**'s residence and purchase the heroin. "19JFB003" advised that **WAINWRIGHT** would sell them a bundle for $80.00. Det. Behan asked "19JFB003" who else lives with **WAINWRIGHT** at 33 Oak Street, which "19JFB003" stated the apartment is rented by a white male that goes by the name of "Peanut". Det. Reilly informed Det. Behan that "Peanut" is an alias for **MACIE**, whom Det. Reilly knew from prior investigations involving illegal narcotic activity at 33 Oak Street, some of which was outlined above.

15. Later on February 20, 2019, a search of "19JFB003" and their vehicle was conducted, and Det. Behan did not locate any forms of illegal narcotics, weapons or large sums of cash during this search. Det. Behan searched "19JFB003" while Det. Todd searched "19JFB003's" vehicle. Det. Todd then provided "19JFB003" with $160.00 of pre-recorded Drug Task Force funds to purchase two bundles of heroin from **WAINWRIGHT**. Det. Behan then followed "19JFB003" as they drove from the pre-arraigned meeting location to 33 Oak Street. During this time, Det. Behan did not observe "19JFB003" to meet with anyone else. At approximately 1347 hours, Det. Behan observed "19JFB003" to pull to the side of Oak Street exit their vehicle and walk down the driveway of 33 Oak Street. At this point Det. Behan lost visual contact with "19JFB003," but Det. Lora was still able to visually monitor "19JFB003" and observed "19JFB003" to enter apartment #4.

16. Approximately a minute later, Det. Lora advised "19JFB003" had exited the apartment and was walking back to their vehicle. Det. Lora then advised "19JFB003" was in their vehicle and was traveling south on Oak Street towards West Street. Det. Behan was able to follow

6

"19JFB003" from the intersection of Oak and West Streets back to the pre-determined meeting location. During this time, Det. Behan did not observe "19JFB003" to meet with anyone else.

17. Once "19JFB003" was in Det. Behan's vehicle they turned over 2 bundles of suspected heroin purchased from **WAINWRIGHT**. A search of "19JFB003's" person and vehicle were conducted and no money or other illegal narcotics were located. Det. Todd conducted the search of "19JFB003's" vehicle while Det. Behan searched his person.

18. "19JFB003" provided a sworn audio recorded statement regarding this controlled purchase from **WAINWRIGHT**. The following is a brief synopsis of "19JFB003's" statement to Det. Behan. "19JFB003" stated the following:

   a. "19JFB003" advised they were provided with $160.00 for the purchase of heroin, and their person and vehicle were searched. "19JFB003" advised he knocked on the door to the apartment and "Peanut" answered the door and let them in. "19JFB003" further advised that **WAINWRIGHT** was on the couch and they told **WAINWRIGHT** they "needed two".

   b. "19JFB003" advised they handed **WAINWRIGHT** the $160.00 and she in return handed them 2 bundles of heroin. "19JFB003" advised after the deal was done they drove back and met with Det. Behan.

19. On February 20, 2019, following this controlled purchase, Det. Behan photographed and tested the evidence. Test results using Fentanyl Reagent #33 test kit showed a positive test for heroin.

20. On February 21, 2019, Det. Behan showed "19JFB003" a booking photo of a white female with no names listed on the photo. "19JFB003" advised they knew the female in the picture and stated the female is Linda **WAINWRIGHT**.

7

*February 22, 2019 Controlled Purchase from WAINWRIGHT*

21.   On February 21, 2019, "19JFB003" again contacted Det. Behan and advised they would be able to purchase heroin from **WAINWRIGHT** at her residence in Brattleboro, VT. On February 22, 2019, a search of "19JFB003" and their vehicle were conducted, and no contraband was located. Det. Behan searched "19JFB003" while Det. Todd searched "19JFB003's" vehicle. Det. Behan then provided "19JFB003" with $160.00 of pre-recorded Drug Task Force funds to purchase two bundles of heroin from **WAINWRIGHT**. Det. Behan also provided "19JFB003" with both audio and visual recording and transmitting devices.

22.   Det. Behan then followed "19JFB003" as they drove from the pre-arraigned meeting location to 33 Oak Street. During this time, Det. Behan did not observe "19JFB003" to meet with anyone else. Det. Behan observed "19JFB003" to pull to the side of Oak Street exit their vehicle and walk down the driveway of 33 Oak Street. At this point, Det. Behan lost visual contact with "19JFB003," but Det. Lora was still able to visually monitor "19JFB003" and observed "19JFB003" to enter apartment #4. Det. Behan was able to monitor "19JFB003" over the audio/video transmitting devices. On the video, "19JFB003" was seen being let into the apartment by **MACIE**.

23.   Less than five minutes later, Det. Lora advised "19JFB003" had exited the apartment and was walking back to their vehicle. Det. Lora then advised "19JFB003" was in their vehicle and was traveling south on Oak Street towards West Street. Det. Behan was able to follow "19JFB003" from the intersection of Oak and West Streets back to the pre-determined meeting location. During this time, Det. Behan did not observe "19JFB003" meet with anyone prior to their meeting at the per-determined meeting location.

8

24. Once "19JFB003" was in Det. Behan's vehicle, they turned over 2 bundles of suspected heroin purchased from **WAINWRIGHT**. A search of "19JFB003's" person and vehicle were conducted and no money or other illegal narcotics were located. Det. Todd conducted the search of "19JFB003's" vehicle while Det. Behan searched "19JFB003."

25. "19JFB003" provided a sworn audio recorded statement regarding this controlled purchase from **WAINWRIGHT**. The following is a brief synopsis of "19JFB003's" statement.

   a. "19JFB003" advised Det. Behan provided them with $160.00 for the purchase of heroin, and their person and vehicle were searched. "19JFB003" also advised Det. Behan placed audio/visual recording and transmitting devices on them.

   b. "19JFB003" advised he knocked on the door to the apartment and "Peanut" answered the door and let them in. "19JFB003" advised they handed **WAINWRIGHT** the $160.00 and she in return handed them 2 bundles of heroin. "19JFB003" advised after the deal was done they drove back and met with law enforcement.

26. On February 22, 2019, following this controlled purchase, Det. Behan photographed and tested the evidence. Test results using Fentanyl Reagent #33 test kit showed a positive test for heroin.

*February 25, 2019 Controlled Purchase from WELLS-COOPER*

27. On February 25, 2019, Det. Reilly arranged a meeting with "19SR01" with the intention of purchasing heroin in the Brattleboro, VT area. "19SR01" advised **WELLS-COOPER** was selling heroin out of 33 Oak Street in Brattleboro, VT. Det. Reilly provided "19SR01" with $200.00 of prerecorded task force funds in order to purchase two (2) bundles of heroin from **WELLS-COOPER**. "19SR01" was searched and his vehicle was searched. No

9

contraband was located. Det. Reilly also provided "19SR01" with an electronic recording device in order to monitor the incident.

28. Det. Todd and Lora provided surveillance in the area while Det. Reilly followed "19SR01" to the area of 33 Oak Street. "19SR01" arrived at 33 Oak Street and entered Apartment 4 on foot. Det. Todd observed "19SR01" enter the residence. After several moments, "19SR01" was then seen by Det. Todd exiting the residence and returning to his vehicle. Det. Reilly surveilled "19SR01" drive back to the predetermined meeting location where Det. Reilly met with him again. In total, "19SR01" provided to Det. Reilly 17 bags of heroin.

29. "19SR01's" person was searched for a second time. No money or contraband was located. "19SR01" then provided a sworn statement. The following is summary of this statement:

   a. "19SR01" drove his vehicle to 33 Oak Street [Apartment 4] and knocked on the door. "19SR01" told Det. Reilly **WAINWRIGHT** answered the door and let him inside. "19SR01" walked inside and asked for **WELLS-COOPER**. "19SR01" was then told that **WELLS-COOPER** was laying inside on the floor; right near the entrance to the apartment.

   b. "19SR01" then made contact with **WELLS-COOPER** and said he needed two (2) bundles. **WELLS-COOPER** then handed "19SR01" the two (2) bundles of heroin and "19SR01" provided **WELLS-COOPER** with the $200.00. "19SR01" then left the residence, and returned to the presence of law enforcement.

   c. "19SR01" identified an unmarked photograph of **WELLS-COOPER**, and "19SR01" confirmed that the subject in the photograph was **WELLS-COOPER**, who was the subject who provided the heroin to him. "19SR01" said also inside

the residence was an unknown black male. "19SR01" advised he also heard Francis "Peanut" Macie while inside the residence. There was also a subject laying next to **WELLS-COOPER,** but "19SR01" did not know who it was because they were sleeping at the time.

30. On February 25, 2019, Det. Reilly tested a sample of the substance which field tested positive for the presence of fentanyl using a NARK field test kit designed to test for the presence of heroin/fentanyl. Det. Reilly noted there were 17 total bags and they were all unmarked and green in color.

## CONCLUSION

31. Based on the above, I believe probable cause exists to search the SUBJECT LOCATION for evidence relating to violations of the Controlled Substances Act, specifically possession with intent to distribute heroin and fentanyl in violation of 21 U.S.C. § 841. Probable cause exists to believe that the distribution of controlled substances has occurred at the SUBJECT LOCATION; the SUBJECT LOCATION contains evidence of possession with intent to distribute controlled substances; the SUBJECT LOCATION contains contraband and fruits of these crimes; and that the SUBJECT LOCATION contains property designed for use, intended for use, or that has been used in committing these crimes.

Respectfully Submitted,

Colin Simons
Special Agent
Federal Bureau of Investigation

11

Subscribed and sworn to before me on February 26, 2019.

John M. Conroy
United States Magistrate Judge

12